**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HOWARD G. BAKER and
FANNIE M. BAKER,

       Appellants,

v.                                      Case No. 13-cv-1117 MCA/GBW

BANK OF NEW YORK MELLON AS TRUSTEE,
by and through its duly authorized servicing agent,
Vanderbilt Mortgage and Finance, Inc., and
VANDERBILT MORTGAGE AND FINANCE, INC.,

       Appellees.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on an appeal by Debtors/Appellants Howard G. Baker and Fannie M. Baker ("the Bakers") from the United States Bankruptcy Court's final judgment in an adversary proceeding. *Doc. 35.* Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me to make findings of fact, perform legal analysis, and recommend an ultimate disposition of the case. *Doc. 31.* Having reviewed the briefing (*docs. 38, 41*), the applicable law, and being otherwise fully advised, I recommend that the United States Bankruptcy Court's judgment in favor of Bank of New York Mellon ("BNYM") and Vanderbilt Mortgage and Finance, Inc. ("VMF") (together, "Appellees") and against the Bakers be AFFIRMED.

I.    **B**ACKGROUND

   A. <u>Factual Background</u>

In October 1997, nearly two decades ago, the Bakers executed and delivered a

promissory note to Oakwood Acceptance Corporation ("Oakwood") in the principal

sum of $85,748.61 and bearing interest at the rate of 9% per year.  *Doc. 8* at 6 (Exhibit A);

*Doc. 20* at 15-26 (Exhibit R).  The Bakers were to make monthly payments of $689.95 on

the note.  *Doc. 20* at 15 (Exhibit R).  In addition, the Bakers executed a mortgage as

security for repayment of the debt.  *Doc. 8* at 7 (Exhibit A); *Doc. 20* at 15-26 (Exhibit R).

The mortgaged property was their house, located on Desert Spriggs Road, Las Cruces,

New Mexico 88012.  *Doc. 4* at 11.

In April 2004, the Bakers were advised that Appellee Vanderbilt Mortgage and

Finance, Inc. ("VMF") would replace Oakwood as the servicer of their account.  *Doc. 4*

at 11.  The Bakers were somewhat inconsistent in their loan payments and, in May or

June of 2004, VMF declared the loan in default and refused to accept further payments.

*Doc. 7* at 53 (Bankruptcy Court's Findings of Fact and Conclusions of Law).  However,

VMF failed to give the Bakers a cure notice, as required by the mortgage agreement,

prior to refusing loan payments and accelerating the loan.  *Doc. 7* at 54.

On August 18, 2004, a foreclosure action was initiated against the Bakers in New

Mexico's Third Judicial District Court.  *Doc. 8* at 6 (Exhibit A).  This action concerned the

same promissory note and mortgage held by Appellees at issue in the instant adversary

proceeding.  *Doc. 6* at 120.  The state court entered summary judgment against the Bakers on March 7, 2005, and ordered a foreclosure sale on their mortgaged house.  *Doc. 10* at 64 (Exhibit H).  The order was "in the nature of a default judgment," because the Bakers had failed to respond to the summary judgment motion.  *Doc. 6* at 121.

On April 4, 2005, the Bakers filed the first of three voluntary bankruptcy petitions in an attempt to save their house from foreclosure.  *Doc. 22* at 1 (Exhibit Y); *doc. 7* at 452-456.  Importantly, the Bakers did not list any claims against Appellees in their Chapter 7 bankruptcy schedules.  *Doc. 7* at 55.  The United States Bankruptcy Court entered an order discharging the Bakers on August 1, 2005.  *Doc. 23* at 1 (Exhibit AA).

On August 22, 2005, the Bakers filed a second voluntary bankruptcy petition, this time under Chapter 13.  *Doc. 23* at 5 (Exhibit BB).  They again failed to list any claims against Appellees.  That case was dismissed on February 10, 2009.  *Doc. 24* at 28.

The Bakers returned to state court on May 19, 2009.  *Doc. 12* at 1.  They filed a Motion for Relief from the state court's entry of summary judgment against them in the foreclosure action, arguing, *inter alia,* excusable neglect.  *Id*.  The motion was denied on July 9, 2009.  *Doc. 19* at 27.

The following day, the Bakers filed a third bankruptcy petition, under Chapter 13, which gave rise to the adversary proceeding now at issue.  *Doc. 24* at 30 (Exhibit LL). This time, the Bakers listed possible claims against Appellees in their bankruptcy schedules.  *Doc. 7* at 56.

Appellees filed a proof of claim in this bankruptcy proceeding on July 27, 2009. *Doc. 25* at 36.  However, instead of asserting a claim against the Bakers for nearly $100,000, as authorized by the state court judgment, Appellees asserted a claim of only $82,100.79.  *See doc. 10* at 69.  The Bakers objected to the proof of claim.  *Doc. 26* at 1. Appellees agreed to reduce the claim to $63,956.26 (*doc. 26* at 10) and, on June 20, 2011, the Bakers withdrew their objection but reserved all other potential claims against Appellees.  *Doc. 26* at 12.

**B.  The Adversary Proceeding**

The Bakers initiated the adversary proceeding that is the subject of this appeal on August 16, 2011.  *Doc. 4* at 9.  Appellee BNYM is the actual holder of the note and owner of the mortgage.  *Doc. 7* at 52-53.  Appellee VMF is BNYM's servicing agent for the note and mortgage, and took all actions at issue in the adversary proceeding.  *Doc. 7* at 53.

The Bakers allege claims of breach of contract, violation of the covenant of good faith and fair dealing, unfair trade practices, and intentional infliction of emotional distress.  *Id.; doc. 4* at 9 (Complaint).  The claims relate to Appellees' refusal to accept payments on the Bakers' loan and their failure to provide the required cure notice prior to refusing loan payments and accelerating the loan.  *See generally doc. 4* at 9.

**1.  *The Bankruptcy Trial***

The bankruptcy court held a three-day trial before Judge David T. Thuma that began on July 17, 2013.  *Doc. 7* at 103.  During opening arguments, Appellees argued for

4

the first time that the Bakers had not listed their claims against Appellees as assets on

their Chapter 7 bankruptcy schedules, and therefore lacked standing to bring them.

*Doc. 7* at 116.  The Bakers objected, arguing that Appellees had waived this defense by

not raising it in their pleadings or in the pretrial order.  *Doc. 7* at 122, 450-51.  The court

overruled the objection, finding that it had "an independent duty to determine . . .

jurisdiction and standing . . . ."  *Doc. 7* at 451.

On the second day of trial, counsel for the Bakers moved to substitute the

Chapter 7 trustee as plaintiff, in an effort to avoid any standing issues that the Bakers,

as debtors, might have.  *Doc. 7* at 487-491.  The Court took the motion under advisement

and proceeded with the trial.  *Doc. 7* at 491.  The trial concluded as planned and, on

October 4, 2013, Judge Thuma filed his Findings of Fact and Conclusions of Law

(FF&CL).  *Doc. 7* at 51.  Judgment was entered in favor of Appellees on all counts.  *Doc. 7* at 72.

### 2.   *The Bankruptcy Court's Findings of Fact & Conclusions of Law*

In its FF&CL, the bankruptcy court found four separate grounds on which the

Bakers' claims could be dismissed.  The separate grounds are as follows.

#### a)   *Standing*

In its FF&CL, the bankruptcy court held that it had "an independent duty to

confirm its subject matter jurisdiction," and concluded that the Bakers had failed to

establish standing because they had not scheduled their claims against Appellees in

their Chapter 7 bankruptcy case.  *Doc. 7* at 57.  The Court held that, "[b]ecause unscheduled claims remain property of the bankruptcy estate, a debtor lacks standing to pursue the claims after emerging from bankruptcy."  *Doc. 7* at 58.  In the alternative, the court found that the Bakers were judicially estopped from pursuing the claims, and thus were also deprived of standing on that basis.  *Id.*

The bankruptcy court denied the Bakers' motion to substitute the trustee, finding that his substitution would "not change the result," because the trustee "was discharged when the Chapter 7 case was closed in 2005 and therefore had no authority to speak on behalf of the estate."  *Doc. 7* at 58-59.

### b)  *Alternative Grounds for Dismissal*

The bankruptcy court next held that the Bakers' claims were subject to dismissal on grounds other than standing.  To begin, the claims were all barred by the applicable statutes of limitation.  *Doc. 7* at 59.  The court found that the Bakers' claims were based on actions taken by Appellees prior to April 2005.  *Doc. 7* at 68.  They therefore failed to meet the filing deadline, "even giving [them] the benefit of every reasonable doubt." *Doc. 7* at 60.

Next, the court held that "the *Rooker-Feldman* doctrine prevent[ed the Bakers] from pursuing their claims . . . [because] [s]uch claims clearly attack the [state] Foreclosure Judgment as improperly entered, and are 'inextricably intertwined' with the judgment."  *Doc. 7* at 62.

Finally, the bankruptcy court held that the Bakers' claims against BNYM were "compulsory counterclaims in the Foreclosure Action, and . . . therefore barred." *Doc. 7* at 64.  Further, the claims were prohibited under collateral estoppel principles.  *Doc. 7* at 66.  The court also found that Appellees VMF and BNYM were in privity with respect to the Bakers' claims because "[a]ll of the acts [the Bakers] complain about were committed by VMF, as BNYM's servicing agent." *Doc. 7* at 67.  Therefore, the Bakers' claims against VMF were also barred.  *Id.*

### 3.  *Post-Trial Motion Practice*

On October 18, 2013, the Bakers filed a Motion for Relief from Judgment and Second Request for Leave to Substitute Chapter 7 Trustee as Plaintiff under Federal Rule of Civil Procedure 17(a).[1]  *Doc. 7* at 74.  They argued that, "[b]y not allowing the Chapter 7 trustee to substitute, the Bakers were prejudiced because the Chapter 7 trustee would have been able to assert formidable legal arguments to [the] affirmative defenses." *Doc. 7* at 77.  Specifically, the Bakers claim, "the Court could not rule that the Chapter 7 trustee would not have standing to assert the claim." *Id.*  They also argued that "the doctrines of res judicata, collateral estoppel and the Rooker-Feldman [sic] would not apply to the Chapter 7 trustee as he would be a 'new party' who was not a

---

[1] Federal Rule of Civil Procedure 17(a)(1) provides: "An action must be prosecuted in the name of the real party in interest . . . ."  Rule 17(a)(3) states that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

party to the previous state court action." *Doc. 7* at 77-78.  Finally, the trustee "would

also have had much stronger arguments for equitable tolling of the statute of

limitations." *Doc. 7* at 78.

The bankruptcy court denied the motion on October 28, 2013. *Doc. 7* at 79.  The

court held that it had the authority to raise issues of both standing and judicial estoppel

*sua sponte* or when "raised for the first time during trial." *Doc. 7* at 81-82 (Memorandum

Opinion Denying Motion for Relief from Judgment).

With respect to the Bakers' motion to substitute the Chapter 7 trustee as the

plaintiff under Federal Rule of Civil Procedure 17(a), the Court found that "[c]ourts are

often skeptical of debtors who omit claims on their bankruptcy schedules and then seek

to substitute bankruptcy trustees . . . .  This is particularly true when the determination

of the right party to bring the action was not difficult and when no excusable mistake

had been made." *Doc. 7* at 83 (citation omitted).  Because the Bakers had known about

their claims against Appellees for many years and a substitution would have prejudiced

Appellees, the Court denied the motion to substitute. *Doc. 7* at 85.  The bankruptcy

court further noted that there were "other, fatal problems" with the Bakers' case,

including the statutes of limitations. *Doc. 7* at 85-86.  The court concluded that the

substitution of the trustee would not have remedied these issues. *Doc. 7* at 85-87.

The Bakers filed a Joint Notice of Appeal on November 7, 2013. *Doc. 1,* Ex. 1 at

24.

## II.    STANDARD OF REVIEW

When reviewing the "final judgment[], order[], [or]decree" of a bankruptcy court

under 28 U.S.C. § 158(a), "the district court . . . appl[ies] the same standards of review

that govern appellate review in other cases." *Country World Casinos, Inc. v.*

*Tommyknocker Casino Corp. (In re Country World Casinos, Inc.)*, 181 F.3d 1146, 1149 (10th

Cir. 1999).  Thus, questions of law are reviewed de novo and discretionary decisions for

abuse of discretion. *Busch v. Anderson (In re Busch)*, 294 B.R. 137, 140 (B.A.P. 10th Cir.

2003) (citing *Pierce v. Underwood,* 487 U.S. 552, 558 (1988)).  The district court is bound by

the bankruptcy court's findings of fact unless they are clearly erroneous. *Id.,* FED. R.

BANKR. P. 8013.


## III.    ANALYSIS

The Bakers' arguments on appeal center on the bankruptcy court's alleged error

in refusing to permit the Chapter 7 trustee to substitute as the plaintiff in the adversary

proceeding.  The Bakers contend, in particular, that the substitution would have

abrogated any standing issues that they had.  The Court will therefore begin by

addressing the issue of the Bakers' standing and the bankruptcy court's ruling on that

point.

## A. <u>The Bakers Lacked Standing to Bring the Claims at Issue</u>

### 1. *The Bakers' Claims Became Property of the Chapter 7 Bankruptcy Estate*

As stated above, the Bakers first filed bankruptcy, under Chapter 7, on April 4, 2005.  "The filing of a bankruptcy petition transforms the filing party's 'legal or equitable interests'" — including all pending or potential causes of action —"into property of the bankruptcy estate."  *Brumfiel v. U.S. Bank*, No. 12-2716, 2013 WL 5495543, at *4 (D. Colo. Oct. 2, 2013) (citing 11 U.S.C. § 541(a)).  Thus, any legal claims that the Bakers had against Appellees at the time they filed for bankruptcy became property of the estate.  This is true even though the Bakers failed to schedule these claims in their petition.  *Tuttle v. Equifax Check Servs., Inc.*, No. 3-96-948, 1997 WL 835055, at *2 (D. Conn. June 17, 1997).

In its FF&CL, the bankruptcy court concluded that all of the Bakers' claims against Appellees were based on events that occurred prior to April 2005.[2]  *Doc. 7* at 68.  Thus, all the claims at issue in this appeal had accrued by the time the Bakers filed for bankruptcy, and therefore became property of the Chapter 7 bankruptcy estate.  These claims remained property of the estate even after the case was closed on August 1, 2005.  *See* 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned . . . and that is not administered . . . remains property of the estate.").

---

[2] While the Bakers apparently "do not agree that the bankruptcy court had the ability to determine whether claims were or were not pre or post petition claims when it determined that it lacked subject matter jurisdiction," they offer no basis to doubt the bankruptcy court's finding.

### 2.   The Chapter 7 Trustee is the Real Party in Interest

"Upon the filing of a Chapter 7 petition, an interim Trustee is appointed to administer, *inter alia*, the property of the estate."  *Anderson v. ACME Mkts., Inc.*, 287 B.R. 624, 628 (E.D. Pa. 2002) (citing 11 U.S.C. § 701).  Once a trustee is appointed, he "has the exclusive right to prosecute causes of action that are property of the bankruptcy estate." *Id.*  Thus, "a Chapter 7 debtor no longer has standing to pursue a cause of action which accrued at the time the Chapter 7 petition was filed . . . ."  *Id.*

Because the Bakers' claims against Appellees were property of the bankruptcy estate, "the bankruptcy trustee [became] the real party in interest," and the Bakers were deprived of standing to pursue these claims.  *Brumfiel*, 2013 WL 5495543, at *4.

### 3.   The Trustee Did Not Abandon the Claims Against Appellees

On appeal, the Bakers briefly argue that they may yet have standing if the trustee abandoned the claims.  "A debtor may regain standing to pursue a cause of action if it is abandoned by the Trustee."  *Anderson*, 287 B.R. at 629.  The Bakers contend that they "were never given a fair opportunity" to make this argument because Appellees did not raise the standing issue until the first day of trial.  *Doc. 35* at 12.

Abandonment of property of the estate by the trustee may occur in one of three ways: (1) "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate," (2) "[o]n request of a party in interest and after a notice and a hearing, the

11

court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate," or (3) any property that has been scheduled but that is "not otherwise administered at the time of the closing of a case is abandoned by the debtor." 11 U.S.C. § 554(a), (b), (c); *see also Siler v. Wal-Mart Stores, Inc.*, No. 03-31, 2005 WL 1185805, at *3 (S.D. Ohio May 17, 2005). The first two means of abandonment are inapplicable here because there was no notice or hearing. Likewise, the third means of abandonment is manifestly inapplicable because the Bakers never scheduled their claims against Appellees in the Chapter 7 case.[3]

In conclusion, the trustee could not have abandoned the claims against Appellees, and the Bakers' argument that they "were severely prejudiced in that they were denied their right to fairly address the [abandonment] issue" has no merit. *Doc. 35* at 13; *see also Van Sickle v. Fifth Third Bancorp.*, 12-11837, 2012 WL 3230430, at *2 (E.D. Mich. Aug. 6, 2012) (finding it "clear from the bankruptcy record that the trustee did not abandon [the debtors'] claims" where the claims were not scheduled and there had been no notice or hearing).

---

[3] The Bakers cite to *In re Hill*, 195 B.R. 147 (Bankr. D.N.M. 1996), for the proposition that a claim may be "abandoned by the trustee even though the debtor did not formally list the claim in his schedules." *Doc. 35* at 12. In that case, the court noted that the underlying concern regarding abandonment is whether the claim "has been deliberately and knowingly abandoned." *In re Hill*, 195 B.R. at 151. Because there was concrete evidence that the trustee was "fully aware of the . . . claim" at issue, the court found "that the trustee [had] made an intelligent decision, based on reasonably available information, to abandon the claim." *In re Hill*, 195 B.R. at 150. In contrast, the Bakers have presented no evidence or argument that the Chapter 7 trustee knew of the claims against Appellees or knowingly abandoned them. Thus, *In re Hill* is inapplicable.

For the foregoing reasons, the bankruptcy court correctly determined that the Bakers lacked standing to bring their claims against Appellees.  I therefore recommend that the Court AFFIRM this ruling.

**B.** **The Bankruptcy Court Did Not Abuse its Discretion by Dismissing The Bakers' Claims for Lack of Standing**

The Bakers next contest that, assuming they did lack standing due to their failure to list claims against Appellees in their bankruptcy schedule, this was an issue of prudential—as opposed to constitutional—standing, that did not mandate dismissal of their case.  *Doc. 35* at 13-14.

The Supreme Court has recognized two separate concepts of standing: "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Article III standing under the constitution "determin[es] the power of the court to entertain the suit."  *Id.*  Prudential standing concerns "other limits on the class of persons who may invoke the courts' decision and remedial powers," such as the requirement that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Id.* at 499.  Thus, prudential standing "is not jurisdictional in the sense that Article III standing is."  *MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 747 (7th Cir. 2007).  Unlike constitutional standing, which mandates dismissal, prudential standing "can be waived or forfeited just like any other nonjurisdictional defense to a suit."  *Id.*

13

The Bakers argue that the bankruptcy court's dismissal of their claims was based on "this non-constitutional, prudential limitation on standing." *Doc. 35* at 15.  Thus, the bankruptcy court was not obligated to dismiss the Bakers' claims.  Rather, they argue, the court should have found that Appellees waived this defense by not raising it earlier in the proceedings.

Accepting the Bakers' argument regarding prudential standing as correct, the bankruptcy court still had discretion to dismiss the case on this basis. *MainStreet*, 505 F.3d at 747.  ("[N]onconstitutional lack of standing belongs to an intermediate class of cases in which a court can notice an error and reverse on the basis of it even though no party has noticed it and the error is not jurisdictional . . . .").  This Court should not, therefore, disturb the bankruptcy court's decision unless it has "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (citation omitted).  This occurs only when the lower court's decision is "arbitrary, capricious or whimsical, or results in a manifestly unreasonable judgment." *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994).

There is nothing in the record to indicate that the bankruptcy court's dismissal of the Bakers' claims was an abuse of discretion.  In the Order Denying Motion for Reconsideration, Judge Thuma correctly noted that a court may raise issues of standing—even prudential standing—*sua sponte* at any point in the proceedings.  More

14

importantly, the Bakers have entirely failed to provide any argument or authority that significantly undermines the court's ruling on this point.  They simply state that although "the court may raise an unpreserved prudential-standing question on its own . . . it is not obligated to do so."  *Doc. 35* at 14.  This is an insufficient basis upon which to find an abuse of discretion.

Because the Bakers have failed to present any argument indicating that the bankruptcy court abused its discretion by dismissing the Bakers' claims based on prudential standing, I recommend that the Court AFFIRM this ruling.

## C.  The Bankruptcy Court Did Not Abuse its Discretion in Refusing to Allow the Trustee to Substitute as the Plaintiff[4]

The Bakers' argue that, having found that the Chapter 7 trustee was the real party in interest, the bankruptcy court should have permitted him to substitute as the plaintiff in the adversary proceeding.  They contend that they were prejudiced by the court's erroneous ruling because the trustee would have been able to defend against Appellees' defenses of standing, res judicata, collateral estoppel, and the *Rooker-Feldman* doctrine.  *Doc. 35* at 16.

Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1).  The

---

[4] In their opening brief, the Bakers argue that the bankruptcy court's finding that the Bakers' counsel had "recently spoke to the former trustee in the Chapter 7 Case, and that the trustee had agreed to allow [the Bakers] to proceed" was clearly erroneous.  *Doc. 35* at 15 (quoting Bankruptcy Court's Findings of Fact and Conclusions of Law, *doc. 8* at 58).  The Bakers clarified that the trustee had actually agreed to take the necessary steps to substitute in as the plaintiff.  I agree with Appellees that "this error is of no prejudicial effect, and has no legal effect on the court's judgment."  *Doc. 38* at 12.

requirement of this rule—that a litigant cannot sue to enforce the rights of third parties—is "essentially a codification of [the] . . . prudential limitation on standing." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). However, a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3).

This Court reviews a bankruptcy court's decision of whether to substitute a party as the "real party in interest" under Federal Rule of Civil Procedure 17(a) for abuse of discretion. *See Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004). For the reasons set forth below, I recommend finding that the bankruptcy court did not abuse its discretion in declining to permit the Chapter 7 trustee to substitute as the plaintiff in this adversary proceeding.

In order for the bankruptcy court to permit the Chapter 7 trustee to substitute as the plaintiff in the adversary proceeding, it would have had to reopen the original Chapter 7 bankruptcy case. Under 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." "Whether to reopen a closed bankruptcy case falls within the Court's discretion." *In re Robinson*, No. 11-93-12310, 2009 WL 2877627, at *1 (Bankr. D.N.M. Mar. 19, 2009); *see also In re Petroleum Prod. Mgmt.*, 282 B.R. 9, at *13 (B.A.P. 10th Cir. 2002).

I recommend finding that the bankruptcy court did not abuse its discretion in declining to reopen the bankruptcy case.  "In order to reopen a case, the court must find that there is a compelling reason to reopen."  9E AM. JUR. 2D. *Bankruptcy* § 3744 (2014). One of the factors courts consider in determining whether to reopen a bankruptcy case is the length of time that the case has been closed.  *Id.; see also In re Janssen*, 396 B.R. 624, 635 (Bankr. E.D. Pa. 2008).  As stated above, the Bakers' Chapter 7 bankruptcy case was closed in August 2005, roughly eight years before the Bakers made their request to substitute the trustee as plaintiff.  In its Memorandum Opinion denying the Bakers' Motion for Reconsideration, the bankruptcy court found that the Bakers had not been diligent when they failed to schedule their claims against Appellees, and cited to evidence showing that the Bakers had been aware their claims since before filing for their first bankruptcy.  *Doc. 7* at 85.  Eight years and two bankruptcy proceedings later, the Bakers finally moved to substitute the trustee as the real party in interest.

The bankruptcy court further noted that reopening the case at this juncture would prejudice Appellees because it "would . . . require[] the postponement of the trial for weeks or months, until after the Trustee had been duly reappointed and his arrangements with Plaintiffs and counsel had been noticed to creditors and approved by the Court."  *Doc. 7* at 85.  I find the bankruptcy court's reasoning on this point to be sound.

In a similar vein, the bankruptcy court held that substitution under Rule 17 was inappropriate here because "the determination of the right party to bring the action was not difficult and . . . no excusable mistake had been made." *Doc. 7* at 83 (citing *Van Sickle*, 2012 WL 3230430, at *3). The Court concluded that eight years was more than a "reasonable time . . . for the real party in interest to . . . be substituted into the action" under Rule 17(a)(3), and affirmed that this rule was "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Doc. 7* at 6 (citing *Rodriguez v. Mustang Mfg. Co.*, No. 07-13828, 2008 WL 2605471 (E.D. Mich. June 27, 2008)). This case does not fall within either of those classifications. To the contrary, the law clearly states that only a trustee has standing to bring claims that accrued prior to a debtor filing for bankruptcy, and the Bakers were aware of their claims against Appellees when they filed each of their three bankruptcy proceedings.

Finally, the bankruptcy court properly found that there were "other, fatal problems with [the Bakers'] claims." *Doc. 7* at 85. The Bakers argue that substitution of the trustee would eliminate the issues of the statutes of limitations, the *Rooker-Feldman* doctrine, and res judicata. However, they offer no persuasive reasoning in support of this position (*see doc. 35* at 16), and the bankruptcy court was correct in determining that the trustee, if substituted as the plaintiff, would be in the same position as the Bakers

with regard to these defenses.[5]  The trustee in this case would be bringing claims "as successor to [the Bakers'] interests included as property of the estate . . . ."  *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir. 1996) (citation omitted).  Thus, he would be "stand[ing] in the shoes of the debtor[s]"—the Bakers—and could "take no greater rights than [the Bakers themselves] had."  *Id.* at 1305.  The trustee would therefore be "subject to the same defenses."  *Id.*

For the foregoing reasons, I recommend that the Court AFFIRM the bankruptcy court's denial of the Bakers' motion to substitute the trustee as plaintiff.

### D.  <u>The Bankruptcy Court Did Not Err in Holding that Various Legal Doctrines Would Have Prohibited The Bakers' Claims</u>

Finally, the Bakers argue that the bankruptcy court committed reversible error in holding that the statute of limitations, the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel would have prohibited the Bakers' claims.  They argue that once the bankruptcy court determined it lacked jurisdiction, it was error to continue to hear evidence or make further rulings in the case.  Instead, the court should have merely dismissed the case without prejudice or permitted the substitution of the Chapter 7 trustee "[r]ather than rule on issues the bankruptcy court admits that it did not have jurisdiction over."  *Doc. 35* at 14-15.

---

[5] The Bakers contend that the bankruptcy court erred by issuing an "advisory opinion" when it concluded that the statutes of limitations, the *Rooker-Feldman* doctrine, res judicata and collateral estoppel would have prohibited to the claims against the Chapter 7 trustee.  To the contrary, this was not an improper advisory opinion, but reasoning that informed the court's exercise of discretion in deciding whether to substitute the trustee as the plaintiff.  Because the court concluded that the trustee would be in the same shoes as the Bakers, it determined that substitution was not proper.

The Bakers' argument is without merit.  Appellees correctly point out that Judge Thuma's FF&CL "is written in the alternative, finding that (1) the Bakers had no standing . . ., and that (2) even if the Bankruptcy Court had jurisdiction over the claims asserted . . ., they were all barred by the defenses asserted by Appellees and by the *Rooker-Feldman* doctrine, as well as judicial estoppel."  *Doc. 38* at 5-6.  The Bakers cite to no authority prohibiting a court from ruling in the alternative when one of the bases for dismissal is a lack of standing, and this Court is aware of none.

Finally, Appellees are correct that the Bakers "make no argument that effectively contradicts [the bankruptcy court's] findings and [cite] no authorities that demand reversal of any of these rulings . . . ."  *Doc. 38* at 7.  Thus, even if this Court were to find in the Bakers' favor on appeal and determine that the bankruptcy court erred in finding that the Bakers lacked standing, it ultimately "doesn't matter at the end of the day," because the court's dismissal would still stand on alternative grounds.  *Doc. 38* at 1.

For the foregoing reasons, I recommend that the Court find this argument to be without merit.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the United States Bankruptcy

Court's judgment in favor of Appellees and against the Bakers be AFFIRMED.


_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---